UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :

            - v. -                   :

MELISSA G. KING,                     :

            Defendant.               :

- - - - - - - - - - - - - - - x



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 2 4 2011

SUPERSEDING INDICTMENT

S2 10 Cr. 122 (JGK)

## COUNT ONE

(Embezzlement from Employee Benefit Plans)

The Grand Jury charges:

### Relevant Persons and Entities

1.   At all times relevant to this Indictment, the Compressed Air and Free Air Foundations, Tunnels, Caissons, Subways, Cofferdams, Sewer Construction Workers Local No. 147 of New York, New Jersey States and Vicinity AFL-CIO ("Local 147"), which is also known as the "Sandhogs Union," was a labor union that had entered into collective bargaining agreements with companies that engaged in various construction projects in and around the New York City area.  At all times relevant to this Indictment, Local 147, and the employers with which it had collective bargaining agreements, had established and maintained plans that provide various benefits to Local 147's members. Those plans were supported by payments from employers who had entered into collective bargaining agreements with Local 147, and included, among others:

a.    The Local 147 Construction Workers Retirement Fund ("Retirement Fund"), which was established in or about 1970 to provide retirement benefits to eligible participants and beneficiaries;

b.    The Local 147 Construction Workers Annuity Fund ("Annuity Fund"), which was established in or about 1982 to provide annuity benefits to eligible participants and beneficiaries; and

c.    The Local 147 Construction Workers Additional Security Benefits Fund ("ASB Fund"), which was established in or about 1983 to provide benefits such as severance payments, unemployment benefits, workers' compensation, certain medical expenses and death benefits to eligible participants and beneficiaries (the Retirement Fund, the Annuity Fund, and the ASB Fund are collectively referred to hereinafter as the "Local 147 Funds" or the "Funds").

2.    At all times relevant to this Indictment, the Local 147 Funds were employee welfare benefit plans and/or employee pension benefit plans subject to the Employee Retirement Income Security Act of 1974.  Each of the Funds are governed by a board of trustees (the "Trustees").

3.    At all times relevant to this Indictment, MELISSA G. KING, the defendant, resided in Westchester County, New York, and by and through a New York limited liability company that she

2

controlled, King Care, LLC ("King Care"), provided third-party administrative services to the employee benefit plans of labor unions in the New York City area.  At all times relevant to this Indictment, King Care was jointly owned by KING's elderly parents, who reside in Florida, but who have no role in the day-to-day management of King Care.  At all times relevant to this Indictment, King Care maintained offices in New York, New York and at KING's residence in Westchester County, New York.  From at least in or about 2002 up to and including in or about 2008, KING, by and through King Care, provided third-party administrative services to the Retirement Fund, the Annuity Fund, and the ASB Fund.

                    KING's Involvement with the Local 147 Funds

          4.   Since on or about January 1, 2002, the relationship between MELISSA G. KING, the defendant, and each of the Local 147 Funds has been governed by a written agreement (the "Agreements").  The Agreements provide, among other things, that KING, through King Care, was to collect employer contributions to the Local 147 Funds; maintain bank accounts for the Funds; determine eligibility for benefits; make appropriate filings on behalf of the funds with regulatory agencies, including the Department of Labor; maintain a general ledger of the funds' income and expenses; provide periodic reports to the Trustees; and pay claims to the beneficiaries of the Local 147 Funds.

5.   In or about 2002, the Agreements provided that King Care would be paid $10,000 per month in quarterly payments for each of the Local 147 Funds, for a total of $30,000 per month or $360,000 per year.   Beginning in or about 2003 and up to and including in or about 2008, the Agreements were modified so that King Care would be paid $15,000 per month in quarterly payments for each of the Local 147 Funds, for a total of $45,000 per month or $540,000 per year.

6.   At all times relevant to this Indictment, the Agreements also provided, among other things, that King Care could bill the Local 147 Funds for hiring additional staff and for expenses related to King Care's administration of the Local 147 Funds.   Pursuant to the Agreements, King Care's expenses had to be reconciled with the Local 147 Funds annually.

7.   At all times relevant to this Indictment, each of the Local 147 Funds had an account at a Bronx, New York branch of Bank of America (the "Annuity Fund Account," the "Retirement Fund Account," and the "ASB Fund Account," collectively, the "Local 147 Fund Accounts").   Pursuant to her responsibilities as an administrator of the Local 147 Funds, MELISSA G. KING, the defendant, had the authority to use a signature stamp on behalf of the Trustees to sign checks drawn on the Local 147 Fund Accounts.   King Care also held a bank account at Bank of America (the "King Care Account").

4

8.   As of on or about December 31, 2008, King Care's contract with each of the Local 147 Funds was terminated by the Trustees.

<u>KING's Embezzlement from the Local 147 Funds</u>

9.   Between in or about September 2002 up to and including in or about November 2008, MELISSA G. KING, the defendant, used the check-signing authority granted to her by the Trustees to transfer, by check, over $40 million from the Local 147 Fund Accounts to the King Care Account.  All of the checks that were drawn on the Local 147 Fund Accounts and deposited into the King Care Account were made payable to "KingCare LLC," "KingCare," or some variation thereof.  KING would often make those checks out in the amount of $50,000 or in some other number that was higher or lower than $50,000 by $5,000 increments, such as $65,000 or $35,000, and would often write several checks on a single day or over a period of several days.  For example:

a.   From on or about October 10, 2002, up to and including on or about October 30, 2002, KING wrote eight checks, each in the amount of $50,000, one check in the amount of $20,000, and one check in the amount of $30,000.  All of these checks, totaling $450,000, were drawn on the Annuity Fund Account, made payable to King Care, and deposited into the King Care Account.

b.     From on or about January 3, 2006, up to and
including on or about January 25, 2006, KING wrote ten checks in
the amount of $50,000, one check in the amount of $45,000, and
one check in the amount of $40,000.  All of these checks,
totaling $585,000, were drawn on the Annuity Fund Account, made
payable to King Care, and deposited into the King Care Account.

c.     On or about October 15, 2007, KING wrote six
checks, each in the amount of $50,000, drawn on the ASB Fund
Account.  All of these checks, totaling $300,000, were drawn on
the Annuity Fund Account, made payable to King Care, and
deposited into the King Care Account.

d.     On or about October 1, 2008, and on or about
October 15, 2008, KING wrote a total of fourteen checks, each in
the amount of $65,000, drawn on the Annuity Fund Account.  All
of these checks, totaling $910,000, were drawn on the Annuity
Fund Account, made payable to King Care, and deposited into the
King Care Account.

### KING's Personal Use of the Embezzled Proceeds

10.   Between in or about November 2002 through in or
about October 2009, MELISSA G. KING, the defendant, transferred
over $40 million out of the King Care Account, which KING then
used primarily to pay personal expenses.  KING's personal use of
the proceeds she embezzled from the Local 147 Funds included,
among others, the following:

   a. From in or about 2002 up to and including in or about 2009, KING transferred over $7 million to American Express from the King Care Account, almost exclusively for personal expenses unrelated to the administration of the Local 147 Funds;

   b. From in or about March 2003 through in or about June 2008, KING transferred at least $5 million from accounts funded by the King Care Account to pay for horses and horse-related expenses;

   c. On or about October 13, 2006, KING transferred approximately $500,000 from the King Care Account to an account at E-Trade Securities, as payment for a horse;

   d. From in or about June 2004 through in or about December 2008, KING transferred over $300,000 from the King Care Account to Neiman Marcus, primarily to pay for women's clothing;

   e. From in or about November 2003 through in or about May 2007, KING transferred approximately $197,000 from the King Care Account to "Melissa King," "Melissa G. King," and "M G King";

   f. From in or about May 2007 through in or about March 2008, KING transferred nearly $1 million from the King Care Account to Lugano Diamonds in Newport Beach, California for several pieces of jewelry and watches;

g.   On or about January 9, 2008, KING paid, by check, approximately $155,500 to The Ritz Carlton Palm Beach from the King Care Account;

h.   From in or about June 2003 up to and including in or about May 2007, KING transferred approximately $1.7 million from the King Care Account to "King Care," "King Care LLC," and "King Enterprises LP";

i.   From in or about November 2002 up to and including in or about August 2009, KING transferred over $11 million from the King Care Account to other bank accounts held by King Care and used hundreds of thousands of dollars of those funds to pay for three housekeepers, a tutor for KING's children, and to make payments to KING's parents, among others;

j.   On or about July 16, 2008, KING transferred approximately $99,711 from an account funded by the King Care Account to CitationShares Management, LLC, for approximately 13.3 hours of flight time on a private jet;

k.   From in or about June 2003 up to and including in or about September 2008, KING transferred approximately $917,000 from the King Care Account to the Kurt Rosen Asset Management Trust, and the money was used to pay the mortgage on KING's home in Westchester County, New York.

l.   From in or about May 2005 to in or about June 2008, KING transferred approximately $319,471 from the King Care Account and through other accounts funded by the King Care

8

Account to several auto dealerships, to purchase a 2005 Porsche Cayenne, a 2008 Mercedes Benz S Class, a 2008 Mercedes Benz CLK, and a 2008 Range Rover.

<u>Statutory Allegation</u>

11.   From in or about 2002 up to and including in or about November 2008, in the Southern District of New York and elsewhere, MELISSA G. KING, the defendant, unlawfully, willfully, and knowingly, embezzled, stole, and abstracted and converted to her own use and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of employee welfare benefit plans and employee pension benefit plans, and of funds connected therewith, to wit, KING, while administering employee welfare and pension benefit plans associated with the Construction Workers Local No. 147 Union, embezzled, stole, abstracted and converted tens of millions of dollars belonging to those plans and used those funds to pay the personal expenses of herself and others.

(Title 18, United States Code, Sections 664 and 2.)

<u>COUNT TWO</u>

(Mail Fraud)

The Grand Jury further charges:

12.   The allegations contained in Paragraphs 1 through 10 are repeated and realleged as if fully stated herein.

KING's Fraudulent Scheme

13.   From at least in or about 2002, up to and
including in or about November 2008, MELISSA G. KING, the
defendant, engaged in a scheme to defraud the participants of
the Local 147 Funds out of millions of dollars belonging to
those Funds.

14.   As part of her responsibilities as the Local 147
Funds' third-party administrator, MELISSA G. KING, the
defendant, was responsible for distributing financial statements
to participants in the Local 147 Funds.   The financial
statements described, among other things, the participant's
balance, contributions, and earnings.   KING prepared and mailed
the financial statements from Westchester County, New York to
participants, many of whom were located in the New York City
area.

15.   From at least in or about 2002, up to and
including in or about November 2008, and in furtherance of her
scheme to defraud, the financial statements that MELISSA G.
KING, the defendant, caused to be mailed to the Local 147 Fund
participants falsely overstated each participant's balance by
failing to account for the tens of millions of dollars that KING
had taken from the Local 147 Funds.   Accordingly, the statements
prepared by KING gave the appearance that the Local 147 Funds
were capable of paying the Local 147 Fund participants more

benefits than were actually available, thereby concealing the amount of money that KING had taken from the Local 147 Funds.

16.   At all times relevant to this Indictment, MELISSA G. KING, the defendant, mailed and caused to be mailed from Westchester, New York, financial statements to the following Local 147 Fund participants, among others:

a.   An individual ("Participant-1") has been a member of Local 147 since in or about 1963 and is a participant in the Annuity Fund and in the ASB Fund.  Participant-1 received by mail, in Mahopac, New York, financial statements from KING that overstated the amount of benefits available to Participant-1 by failing to disclose the tens of millions of dollars that KING had taken from the Local 147 Funds.  In truth and in fact, Participant-1's Annuity Fund benefits and ASB Fund benefits were tens of thousands of dollars less than what the financial statements mailed by KING reported.

b.   An individual ("Participant-2") has been a member of Local 147 since in or about 1972 and is a participant in the Annuity Fund and in the ASB Fund.  Participant-2 received by mail financial statements from KING that overstated the amount of benefits available to Participant-2 by failing to disclose the tens of millions of dollars that KING had taken from the Local 147 Funds.  In truth and in fact, Participant-2's Annuity Fund benefits and ASB Fund benefits were tens of thousands of dollars less than what the financial statements mailed by KING reported.

### Statutory Allegation

17.  From in or about 2002 up to and including in about November 2008, in the Southern District and elsewhere, MELISSA G. KING, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and took and received therefrom such matters and things, and knowingly caused to be delivered, by mail and such carriers according to direction thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, to wit, in furtherance of a scheme to defraud the Local 147 Funds, KING mailed and caused to be mailed, from Westchester County, New York and elsewhere, financial statements that falsely overstated the amount of benefits available to participants in the Local 147 Funds by concealing the fact that KING had taken for herself tens of millions of dollars from those Funds.

(Title 18, United States Code, Sections 1341 and 2.)

12

the Local 147 Funds by concealing the fact that KING had

misappropriated tens of millions of dollars from those Funds.

(Title 18, United States Code, Sections 1341 and 2.)

<u>COUNTS THREE THROUGH THIRTEEN</u>

(Money Laundering)

The Grand Jury further charges:

18.  The allegations contained in Paragraphs 1 through

10 and 13 through 16 are repeated and realleged as if fully

stated herein.

19.  On or about the dates set forth below, in the

Southern District of New York and elsewhere, MELISSA G. KING,

the defendant, in an offense involving and affecting interstate

and foreign commerce, unlawfully, willfully, and knowingly

engaged and attempted to engage in monetary transactions in

criminally derived property of a value greater than $10,000 that

was derived from specified unlawful activity, to wit, KING

caused the proceeds of a violation of Title 18, United States

Code, Section 664, as alleged in Count One of this Indictment,

and a violation of Title 18, United States Code, Section 1341,

as alleged in Count Two of this Indictment, to be wired from the

King Care Account into accounts at Hudson Valley Bank in

Yonkers, New York, and to be paid by check to certain vendors,

as set forth below:

13

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| THREE | February 22, 2006 | Wire transfer of approximately $175,000 into a Hudson Valley Bank account held by "King Care LLC." |
| FOUR | February 23, 2006 | Wire transfer of approximately $50,000 into a Hudson Valley Bank account held by "King Care LLC." |
| FIVE | February 23, 2006 | Wire transfer of approximately $25,000 into a Hudson Valley Bank account held by "King Care LLC." |
| SIX | September 13, 2006 | Wire transfer of approximately $150,000 into a Hudson Valley Bank account held by "King Care LLC." |
| SEVEN | June 28, 2007 | Two checks from the King Care Account for a total of approximately $312,000 to Lugano Diamonds for a ring and a necklace. |
| EIGHT | July 25, 2007 | Wire transfer of approximately $230,000 into a Hudson Valley Bank account held by "Trust Agreement between Jerome and Mabel King." |
| NINE | August 22, 2007 | Wire transfer of approximately $600,000 into a Hudson Valley Bank account held by "Trust Agreement between Jerome and Mabel King." |
| TEN | August 28, 2007 | Wire transfer of approximately $600,000 from a Hudson Valley Account held by "Trust Agreement between Jerome and Mabel King" for the purchase of a horse named "Pharrell." |
| ELEVEN | October 9, 2007 | Wire transfer of approximately $450,000 into a Hudson Valley Bank account held by "King Enterprises LP." |

14

TWELVE    November 9, 2007    A cashier's check from an account at Hudson Valley Bank held by "King Care LLC" for approximately $107,500 to Friendly Motor Cars for a 2008 Mercedes Benz S Class.

THIRTEEN  January 7, 2008     Wire transfer of approximately $300,000 into a Hudson Valley Bank account held by "Trust Agreement between Jerome and Mabel King."

(Title 18, United States Code, Sections 1957 and 2.)

## COUNTS FOURTEEN TO SEVENTEEN

### (Tax Evasion)

The Grand Jury further charges:

20.  The allegations contained in Paragraphs 1 through 10 and 13 through 16 are repeated and realleged as if fully stated herein.

### KING's Attempt to Evade Taxes

21.  For calendar years 2004 through 2007, MELISSA G. KING, the defendant, failed to report on her U.S. Individual Income Tax Returns, Forms 1040, millions of dollars of personal income that she received from King Care, which income had been falsely and fraudulently reported on King Care's partnership tax returns as business expenses.  Examples of unreported personal income that was falsely reported as the business expenses of King Care include, among others, the following:

a.   King Care's partnership tax returns for calender years 2006 and 2007 claimed deductions for salary and

15

wages paid by King Care to an individual who was listed as King Care's financial advisor. That individual was not, in truth and fact, a financial advisor, but was KING's personal chef.

        b.   King Care's tax returns for calender years 2004 through 2007 claimed deductions for the monthly mortgage payments on KING's primary residence in Westchester County, New York.

Statutory Allegation

     22.  From on or about January 1 of each of the calendar years set forth below, through on or about the filing dates set forth below for each calendar year, in the Southern District of New York and elsewhere, MELISSA G. KING, the defendant, unlawfully, willfully, and knowingly did attempt to evade and defeat a substantial part of the income taxes due and owing by KING to the United States of America for the calendar years listed below by various means, including, among other things, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the Internal Revenue Service, false and fraudulent U.S. Individual Income Tax Returns, Form 1040, for the calender years set forth below, which returns falsely omitted income of approximately $15,840,000 which was used by KING to pay for KING's personal expenses and the personal expenses of her family and others, thereby substantially understating her total income,

adjusted gross income, taxable income, and tax due and owing each calender year as set forth below:

| Count | Calendar Year | Approximate Filing Date | Approximate Understatement of Income |
|---|---|---|---|
| FOURTEEN | 2004 | October 19, 2005 | $2,050,000 |
| FIFTEEN | 2005 | June 20, 2006 | $2,160,000 |
| SIXTEEN | 2006 | October 12, 2007 | $4,250,000 |
| SEVENTEEN | 2007 | October 17, 2008 | $7,380,000 |

(Title 26, United Stated Code, Section 7201.)

## FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

23.  As the result of committing the embezzlement offense in violation of Title 18, United States Code, Section 664, alleged in Count One of this Indictment, and the mail fraud offense in violation of Title 18, United States Code, Section 1341, alleged in Count Two of this Indictment, MELISSA G. KING, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the following:

a.  At least $40,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the embezzlement offense.

17

b.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 62 West Clinton Avenue, Irvington, New York 10533, more particularly described as: Section 4, Map 7B, Block 249, Lot 12, Westchester County, Irvington-On-Hudson, New York 10533-2130.

c.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at LOT 88 The Forest, Ash Tree Lane Wells, Maine 04090, more particularly described as: a certain lot or parcel of land situated in Wells, in the County of York and State of Maine lying on the northwesterly side of U.S. Route One and being further shown and delineated as LOT NO. EIGHTY-EIGHT (88), on the Plan entitled, "Revised Subdivision Plan, The Forest - U.S. Route One, Wells, Maine."

d.   One 2005 Porsche Cayenne, bearing Vehicle Identification Number WPIAB29P55LA64839.

e.   One 2008 Mercedes Benz S Class, bearing Vehicle Identification Number WDDNG86X38A173754.

f.   One 2008 Mercedes Benz CLK, bearing Vehicle Identification Number WDBTK72F08T088820.

g.   One 2008 Land Rover Range Rover, bearing Vehicle Identification Number SALMF15438A289049.

h.   All precious gemstones, precious metals, timepieces, and jewelry purchased from Lugano Diamonds in

18

Newport Beach, California from in or about May 2007 to in or about March 2008, which includes the following:  Two Corum watches (Lot ID 30263) purchased on invoice number 11090; one half carat HS pendant (Lot ID 24469) and one half carat YL HS pendant (Lot ID 14449) purchased on invoice number 10988; one pear pendant (Lot ID 22171) and one 22.93 EM PLT bracelet (Lot ID 22225) purchased on invoice number 10610; One FDOY RAD ring (Lot ID 24874) and one 28 carat Riviera necklace (Lot ID 24877) purchased on invoice number 10798; one pink flower ring (Lot ID 17393) and one pair of 3 ascher drop earrings (Lot ID 23104) purchased on invoice number 10751; and one pair of half hoops earrings (Lot ID 27430), one pair of 9.29 studs (Lot ID 26427), one pair of 2.03 BR studs (Lot ID 22993), one pair of PS pink pave earrings (Lot ID 16058), one pair of Cogniac earrings (Lot ID 27769), and one Cogniac wrap ring (Lot ID 27773) purchased on invoice number 10948.

   i. All precious gemstones, precious metals, and jewelry purchased from Johanna Antiques in Kingsville, Maryland on or about June 2, 2008, including: an 18k gold vintage band ring signed Hermes; an 18k gold Tiffany bar-pin; a platinum ring set with approximately 3 3/4 carats of diamonds and two sapphires; and a pair of antique diamond cluster earrings set in platinum.

   j. All United States precious gemstones, precious metals, and jewelry purchased from Robert Lee Morris in

New York, New York on or about July 29, 2008, including:  One
18k gold Med forward pair of pave earrings; one 18k Gold bangle
with diamond; one pair of 18k pave cascading earrings; and one
18k pave XL orbit mobile.

      k.    All United States currency funds or other
monetary instruments credited to the following Bank of America
accounts in Waltham, Massachusetts:  account number 007490025267
in the name of M.J. Trust; account number 009523303634 in the
name of Daniel King Kaplan; account number 009523302164 in the
name of Daniel King Kaplan; account number 483021806774 in the
name of The Center for Health and Wellness; account number
9405594725 in the name of King Care LLC; and account number
483021809409 in the name of West Clinton Trust.

      l.    All United States currency funds or other
monetary instruments credited to the following Hudson Valley
Bank accounts in Yonkers, New York:  account number 0606648841
in the name of The Kurt Rosen Asset Management; account number
606644541 in the name of The Melissa King Kaplan Irrevocable
Trust; account number 606560006 in the name of Jerome King &
Mable King; account number 606645341 in the name of The Rebecca
Kaplan Trust; account number 606646101 in the name of King
Enterprises LP; account number 606646141 in the name of King
Enterprises LP; account number 606649601 in the name of King
Care LLC; account number 606649641 in the name of King Care LLC;
account number 606651841 in the name of Trust Agreement between

Jerome & Mabel King; account number 606705006 in the name of Daniel King-Kaplan; account number 607093020 in the name of Daniel King-Kaplan; account number 607540141 in the name of King Care LLC; account number 607583541 in the name of King Care LLC; account number 608059601 in the name of Blantyre Farm LLC; account number 608059641 in the name of Blantyre Farm LLC; and account number 608061841 in the name of Bridge Street Interest & Consultants LLC.

       m.   A horse named All Sport, United States Equestrian Federation Identification Number ("USEF No.") 4621047.

       n.   A horse named Bellingham Bay, USEF No. 4066293.

       o.   A horse named Nelson, USEF No. 4125568.

       p.   A horse named Fortune Hunter, USEF No. 4791229.

       q.   A horse named Galliard, USEF No. 4960081.

       r.   A horse named Heartfelt, USEF No. 4884642.

       s.   A horse named North Country, USEF No. 4595800.

       t.   A horse named Starlight, USEF No. 4990323.

       u.   A horse named Tiger Lilly, USEF No. 5005434.

       v.   A New York Life and Annuity Corp. life insurance policy number 63603024.

w.   The following wines stored at New York Fine

Wine Storage in White Plains, New York:

| ITEM DESCRIPTION | SKU/LOT# | QUANTITY |
|---|---|---|
| Abreu Vineyards Madrona Ranch Cabernet Sauvignon 2001 (750ml) | 302850 | 12 |
| Abreu Vineyards Madrona Ranch Cabernet Sauvignon 2002 (750ml) | 139636 | 33 |
| Araujo Estate Eisele Vineyard Cabernet Sauvignon 2003 (750ml) | 139478 | 11 |
| Beychevelle 1998 (750ml) | 40691 | 12 |
| Bienvenues Batard Montrachet Louis Jadot 2006 (750ml) | 148277 | 12 |
| Bookster Cabernet Sauvignon Napa Valley 2004 (750ml) | 136606 | 12 |
| Brunello di Montalcino Riserva Casanuova delle Cerbaie 2001 (750ml) | 145518 | 12 |
| Brunello di Montalcino Ugolaia Lisini 1998 (750ml) | 52217 | 12 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 1990 (750ml) | 71084 | 8 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 1995 (750ml) | 69955 | 5 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 1999 (750ml) | 112398 | 3 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 2000 (750ml) | 119678 | 6 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 2001 (750ml) | 1001011188 | 18 |

| ITEM DESCRIPTION | SKU/LOT# | QUANTITY |
|---|---|---|
| Caymus Vineyards Special Selection Cabernet Sauvignon 2002 (750ml) | 132873 | 24 |
| Caymus Vineyards Special Selection Cabernet Sauvignon 2003 (750ml) | 137149 | 36 |
| Chateau d'Yquem 2001 (375ml) | 132132 | 5 |
| Chateau d'Yquem 2003 (1.5L) | 128961 | 7 |
| Ducru Beaucaillou 1998 (750ml) | 23739 | 12 |
| Harlan Estate 2002 (750ml) | 305990 | 14 |
| Chateau Haut Brion 2004 (750ml) | 132938 | 12 |
| Kistler Vineyards Russian River Pinot Noir 2003 (750ml) | 135903 | 2 |
| La Romanee Chateau de Vosne-Romanee Bouchard Pere et Fils 2004 (750ml) | 133021 | 12 |
| Chateau Lafite Rothschild 2004 (750ml) | 132980 | 48 |
| Langoa Barton 2005 (750ml) | 136042 | 12 |
| Leoville Barton 2003 (750ml) | 128058 | 12 |
| Chateau Margaux 1998 | 52720 | 12 |
| Chateau Margaux 2004 (1.5L) | 132738 | 2 |
| Chateau Margaux 2004 (750ml) | 132738 | 24 |
| Mazis Chambertin Bouchard 2005 (750ml) | 138136 | 12 |
| Peter Michael Les Pavots 2001 (375ml) | 136890 | 1 |
| Philip Togni Napa Cabernet Sauvignon 2003 (750ml) | 136342 | 24 |
| Valpolicella Dal Forno Romano 2001 (750ml) | 137207 | 12 |

Substitute Asset Provision

24.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 664, 981, 1341, and 1957; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)

FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH THIRTEEN

25.  As a result of committing the money laundering offenses in violation of Title 18, United States Code, Section 1957, alleged in Counts Three through Thirteen of this Indictment, MELISSA G. KING, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money

24

laundering offense and all property traceable to such property, including but not limited to the following:

     a.   At least $40,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the money laundering offenses;

     b.   All of the defendant's right, title and interest in the assets identified in Paragraph 23(b)-(v) above.

<u>Substitute Asset Provision</u>

    26.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third person;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value; or

e.   has been commingled with other property
which cannot be subdivided without difficulty; it is the intent
of the United States, pursuant to Title 18, United States Code,
Section 982(b), to seek forfeiture of any other property of said
defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1957.)

FOREPERSON

PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MELISSA G. KING,

Defendant.

## SUPERSEDING INDICTMENT

S2 10 Cr. 122 (JGK)

(18 U.S.C. §§ 664, 1957, 1341, 2 & 26
U.S.C. § 7201.)

PREET BHARARA
United States Attorney

A TRUE BILL

Foreperson.