UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

UNITED STATES OF AMERICA,

         - against -

MELISSA G. KING,

                  Defendant.
────────────────────────────────

10 Cr. 122 (JGK)

<u>MEMORANDUM OPINION AND
ORDER</u>

JOHN G. KOELTL, District Judge:

    These are cross-motions for summary judgment regarding the third-party petition of the Law Offices of Steven E. Rosenfeld, P.C. ("Rosenfeld") filed pursuant to 21 U.S.C. § 853(n).  The petition asserts a legal interest in property that was ordered forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) in connection with the defendant Melissa King's guilty plea in this case.  Specifically, Rosenfeld seeks $87,500 of the $175,000 in funds that Federal Insurance Company ("Federal") agreed to pay the defendant to settle a lawsuit she initiated for breach of contract and breach of fiduciary duty. A Preliminary Order of Forfeiture issued by the Court on October 26, 2011 ordered this $175,000 in funds to be forfeited to the United States.  Rosenfeld claims that he is entitled to half of these funds pursuant to his retainer agreement with the defendant.

**I.**

The following facts are undisputed, unless otherwise indicated.

**A.**

In June 2009, prior to the defendant's arrest on criminal charges, the Compressed Air and Free Air Foundations, Tunnels, Caissons, Subways, Cofferdams, Sewer Construction Workers Local 147 of New York, New Jersey States and Vicinity AFL-CIO ("Local 147") and others brought a civil action against the defendant alleging that she stole more than $5 million from them ("the Local 147 lawsuit").  (Complaint, Richard T. Fitzsimmons et al. v. King Care, LLC et al., No. 09 Civ. 5506 (S.D.N.Y. June 16, 2009), ECF No. 1.)  The defendant retained Peter Till, Esq. and the Pepper Hamilton firm to represent her in the Local 147 lawsuit and, in 2009, paid her attorneys at least $212,000 for this representation.  (Gov.'s R. 56.1 Stmt. ¶¶ 2-3; Rosenfeld Resp. R. 56.1 Stmt. ¶¶ 2-3.)

The defendant was indicted on February 17, 2010 on one count of theft and embezzlement from an employee welfare benefit plan and employee pension benefit plan, in violation of 18 U.S.C. § 664, and eleven counts of money laundering, in violation of 18 U.S.C. § 1957.  (Indictment, United States v. Melissa King, No. 10 Cr. 122 (S.D.N.Y. Feb. 17, 2010), ECF No. 12.)  A superseding indictment and second superseding indictment

were subsequently filed, which added counts of mail fraud and
tax evasion and amended the language of some of the allegations.
(Superseding Indictment ("First Superseding Indictment"), United
States v. Melissa King, No. 10 Cr. 122 (S.D.N.Y. June 30, 2010),
ECF No. 35; Superseding Indictment ("Second Superseding
Indictment"), United States v. Melissa King, No. 10 Cr. 122
(S.D.N.Y. Jan. 24, 2011), ECF No. 115.)  The allegations against
the defendant were that she embezzled approximately $40 million
from Local 147's employee benefit plans and laundered the
embezzled funds through a series of bank accounts.  (Id.)  Each
of the indictments sought the forfeiture of various property
pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982 and 28 U.S.C.
§ 2461, although the fees that the defendant paid to her
attorneys in connection with the Local 147 lawsuit were not
among the property specifically identified.

On August 9, 2010, the defendant signed a retainer
agreement with Rosenfeld whereby Rosenfeld agreed to represent
the defendant in connection with a lawsuit against Local 147's
insurance carriers — Chubb Group of Insurance Companies and
subsequently Federal — for breach of contract and breach of
fiduciary duty ("the Insurance Action").  (Decl. of Steven E.
Rosenfeld ("Rosenfeld Decl.") Ex. D.)  The Insurance Action
alleged that Local 147's insurance carriers failed to provide
the appropriate notifications before removing Ms. King from

Local 147's insurance policy, under which her defense costs in
the Local 147 lawsuit otherwise would have been covered.
(Rosenfeld Decl. Ex. K.)  The complaint alleged that Ms. King
had incurred at least $600,000 in attorney's fees in connection
with the Local 147 lawsuit and was entitled to be compensated
for these expenses.  (Id.)  The complaint also sought an
additional $700,000 to compensate Ms. King for attorney's fees
she was likely to incur in the future.  (Id.)  Ms. King's
retainer agreement with Rosenfeld provided that Rosenfeld would
be entitled to "fifty percent (50%) of the gross proceeds
recovered, whether by suit, settlement, or otherwise."
(Rosenfeld Decl. Ex. D.)  The retainer agreement also provided
that 25% of Rosenfeld's fee would be paid to a co-counsel.
(Id.)  In June 2011, a settlement agreement was reached,
pursuant to which Federal agreed to pay Ms. King $175,000 ("the
Settlement Funds").  (Rosenfeld Decl. Ex. M.)

## B.

On June 16, 2011, the Government moved ex parte for a
restraining order to prevent the insurance carriers from
distributing the Settlement Funds to the defendant on the basis
that these funds were traceable to the proceeds derived from the
alleged embezzlement.  (Aff. of Financial Analyst Steven A.
Yagoda in Supp. of Ex Parte Post-Indictment Restraining Order

4

("Yagoda Aff."), attached as Ex. O to Rosenfeld Decl.)
Specifically, the Government argued that the defendant paid her
attorneys in the Local 147 lawsuit at least $212,000 derived
from crime proceeds and that the Settlement Funds were intended
to reimburse the defendant for these tainted attorney's fees.
(Yagoda Aff. at ¶¶ 10-12.)  The Court granted the Government's
application to restrain these funds on June 17, 2011.  (Post-
Indictment Restraining Order, United States v. Melissa King, No.
10 Cr. 122 (S.D.N.Y. June 17, 2011), ECF No. 155.)

        The defendant subsequently filed a motion for a Monsanto
hearing, in which she asserted, among other arguments, that the
Settlement Funds were not proceeds traceable to the criminal
activity alleged in the indictment.  The Court denied the
defendant's motion for a Monsanto hearing on September 27, 2011
and concluded that the defendant had failed to make a prima
facie showing that the funds were not forfeitable.  (Hr'g Tr.,
Sept. 27, 2011 ("Tr."), at 9.)  The Court noted that defense
counsel had conceded that the Government made an adequate
factual showing that the attorney's fees paid in connection with
the Local 147 lawsuit were traceable to crime proceeds and
concluded that the Settlement Funds "merely reimburse[] the
defendant for these funds and [are] thus also 'traceable to' the
alleged criminal activity and properly forfeitable." (Tr. at 9-
10.)  The Court also denied a motion by Rosenfeld seeking to

enforce a charging lien in the amount of $87,500 against the restrained Settlement Funds, concluding that the ancillary proceeding provided for in 21 U.S.C. § 853(n) was the exclusive means by which Rosenfeld's interest in the property could be adjudicated.  (Tr. at 11-13.)

## C.

On October 21, 2011, the defendant pleaded guilty to a superseding information which contained one count of embezzlement from employee benefit plans in violation of 18 U.S.C. § 664 and one count of false subscription of federal income tax returns in violation of 26 U.S.C. § 7206(1). (Superseding Information, United States v. Melissa King, 10 Cr. 122 (S.D.N.Y. Oct. 21, 2011), ECF No. 218.)  The defendant also signed a Consent Order of Forfeiture that included, among other property subject to forfeiture, the $175,000 in Settlement Funds at issue on these motions.  (Consent Order of Forfeiture/Preliminary Order of Forfeiture as to Specific Properties at 6-7 ¶ pp, United States v. Melissa King, No. 10 Cr. 122 (S.D.N.Y. Oct. 26, 2011), ECF No. 216.)  This Consent Order of Forfeiture was entered as a Preliminary Order of Forfeiture on October 26, 2011.

On November 2, 2011, the Government sent notice of the forfeiture of the Settlement Funds to Rosenfeld.  (Decl. of

Jason P. Hernandez ("Hernandez Decl."), Ex. F.)  On November 15, 2011, Rosenfeld filed a petition pursuant to 21 U.S.C. § 853(n) asserting an interest in $87,500, or half, of the $175,000 in Settlement Funds subject to forfeiture.  Rosenfeld claimed that he was entitled to these funds pursuant to his retainer agreement with the defendant.

On November 23, 2011, the Court received a letter indicating that the Government wished to take discovery from Rosenfeld in connection with the petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(B).  (Rosenfeld Decl. Ex. E.)  On January 27, 2012, the parties filed the cross-motions for summary judgment presently before the Court.

## II.

The standard for granting summary judgment is well established.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty,

in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Behringer v. Lavelle Sch. for Blind, No. 08 Civ. 4899, 2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record

and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993); <u>see also</u> <u>Scotto v. Almenas</u>, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); <u>Behringer</u>, 2010 WL 5158644, at *1.

## III.

### A.

   This criminal forfeiture proceeding is governed by section 853 of Title 21 of the United States Code and Federal Rule of Criminal Procedure 32.2.  Following a conviction or a guilty plea, "the court must determine what property is subject to forfeiture under the applicable statute" and must "promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property . . . ."  Fed. R. Crim. Pr. 32.2(b)(1)(A), b(2)(A).

   The preliminary order of forfeiture is entered "without regard to any third party's interest in the property"; the determination of "whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."  Fed. R. Crim. Pr. 32.2(b)(2)(A).  An ancillary proceeding provides the exclusive

means by which a third party can claim an interest in the property subject to forfeiture. 21 U.S.C. § 853(n)(2); DSI Assocs. LLC v. United States, 496 F.3d 175, 183 (2d Cir. 2007); De Almeida v. United States, 459 F.3d 377, 381 (2d Cir. 2006). A third party asserting such an interest must petition the court for a hearing to adjudicate the validity of that interest. 21 U.S.C. § 853(n)(2). A petitioner can demonstrate a valid interest in property subject to forfeiture only by showing that one of two conditions applies:

> A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6); see also Pacheco v. Serendensky, 393 F.3d 348, 353 (2d Cir. 2004). The petitioner bears the burden of proof in the ancillary proceeding and must establish by a preponderance of the evidence that one of these two conditions applies. 21 U.S.C. § 853(n)(6); Pacheco, 393 F.3d at 351. If the petitioner meets this burden, the forfeiture order must be amended to exempt the third-party interest. 21 U.S.C.

§ 853(n)(6); <u>United States v. Andrews</u>, 530 F.3d 1232, 1236 (10th Cir. 2008); <u>United States v. Peterson</u>, No. 04 Cr. 752, 2010 WL 2331990, at *1 (S.D.N.Y. June 9, 2010).  Conversely, if the petitioner cannot show that either condition applies, then the petitioner cannot demonstrate a valid interest in the property subject to forfeiture.  See <u>United States v. Kennedy</u>, 201 F.3d 1324, 1335 (11th Cir. 2000).  When the ancillary proceeding concludes, the Court enters a final order of forfeiture, which is final with respect to all third parties.  Fed. R. Crim. Pr. 32.2(c)(2).

The Court may dispose of a third-party petition without a hearing by allowing parties to file motions for summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Cr. Pr. 32.2(c)(1)(B); <u>see also</u> <u>Pacheco</u>, 393 F.3d at 351-52.  In this case, neither party has requested a hearing; instead, they have filed motions for summary judgment contending that no facts are in dispute and that they are entitled to judgment as a matter of law.

**B.**

Rosenfeld first argues that he has a valid interest in the Settlement Funds pursuant to § 853(n)(6)(A), which requires a petitioner to show that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the

right, title, or interest was vested in the petitioner
rather than the defendant or was superior to any right,
title, or interest of the defendant at the time of the
commission of the acts which gave rise to the forfeiture of
the property under this section[.]

21 U.S.C. § 853(n)(6)(A).

Rosenfeld contends that he has a legal interest in the
Settlement Funds by virtue of his charging lien on fifty percent
of these funds which, under New York law, provides the attorney
with a vested property interest in the client's cause of action
at the time of the signing of a retainer agreement. LMWT Realty
Corp. v. Davis Agency, Inc., 649 N.E.2d 1183, 1186 (N.Y. 1995).
Moreover, Rosenfeld argues that his interest in the Settlement
Funds is superior to that of the defendant, because, under New
York law, a charging lien is superior to most other liens as a
matter of equity.

However, while Rosenfeld is correct that New York State law
determines the respective interests held by the petitioner and
the defendant, it is federal law that determines whether the
petitioner's interest satisfies the requirements of § 853(n)(6).
See, e.g., United States v. Oregon, 671 F.3d 484, 491-92 (4th
Cir. 2012); United States v. Shefton, 548 F.3d 1360, 1364 (11th
Cir. 2008); United States v. Madoff, No. 09 Cr. 213, 2012 WL
1142292, at *3 (S.D.N.Y. Apr. 3, 2012.)

Under federal law, any interest Rosenfeld holds in the
Settlement Funds does not satisfy the requirements of

§ 853(n)(6)(A).  Section 853(n)(6)(a) requires that a petitioner's interest in the property be vested "at the time of the commission of the acts which gave rise to the forfeiture of the property under this section."  21 U.S.C. § 853(n)(6)(A); see also United States v. Hooper, 229 F.3d 818, 821 (9th Cir. 2000) ("To make sense of [§ 853(n)(6)(A)], it is necessary to read the temporal requirement — 'at the time of the commission of the acts which gave rise to the forfeiture' — as applying to both 'vested in the petitioner rather than the defendant' and the alternative 'or was superior to any right, title, or interest of the defendant.'").  Thus, a petitioner whose interest in the forfeitable property arises only after the commission of the criminal activity giving rise to the forfeiture cannot satisfy the requirements of § 853(n)(6)(A).  See, e.g., United States v. Eldick, 223 F. App'x 837, 840 (11th Cir. 2007) ("In order to have a superior interest, then, the claimant must have had a legal right, title, or interest in the forfeitable properties that preceded the commission of the crime that gave rise to the forfeiture of that property."); Pacheco, 393 F.3d at 353 ("Because Pacheco obtained her asserted interest in the Premises after the conduct giving rise to the forfeiture, [§ 853(n)(6)(A)] could not apply."); United States v. Mendez, No. 07 Cr. 107, 2008 WL 3874318, at *3 (E.D.N.Y. Aug. 19, 2008) ("[I]t is difficult to imagine how Petitioner could possibly

argue that it fit within [§ 853(n)(6)(A)], since Petitioner had no interests in the Deposits until May 2006, long after the commission of the acts that gave rise to the forfeiture.").

Indeed, where a petitioner claims an interest in property purchased with crime proceeds, § 853(n)(6)(A) will likely never apply, because crime proceeds, by definition, do not precede the commission of criminal activity but instead result from that criminal activity. As the Court of Appeals for the Ninth Circuit explained in Hooper:

> [Section] 853(n)(6)(A) is likely never to apply to proceeds of the crime. Section 853(n)(6)(A) is far better designed to deal with instrumentalities of the crime. If a husband, for example, uses the family car for drug trafficking, his spouse may qualify under § 853(n)(6)(A) by showing that she had an interest in that car that preceded the crime. Proceeds of crime, however, do not precede the crime.

229 F.3d at 822; see also United States v. Timley, 507 F.3d 1125, 1130 (8th Cir. 2007); United States v. Moses, No. 05 Cr. 133, 2012 WL 458494, at *2 (D. Vt. Feb. 10, 2012). In reaching this conclusion, the Court of Appeals for the Ninth Circuit drew support from 21 U.S.C. § 853(c), which provides that title to forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture under this section" and that "[a]ny such property that is subsequently transferred to a person other than the defendant" may be forfeited to the United States unless the transferee qualifies as a bona fide purchaser for value under 21 U.S.C.

14

§ 853(n)(6)(B).  21 U.S.C. § 853(c); <u>Hooper</u>, 229 F.3d at 822.
This "relation-back" doctrine "reflects the application of the
long-recognized and lawful practice of vesting title to any
forfeitable assets, in the United States, at the time of the
criminal act giving rise to forfeiture" and ensures that a
defendant is not able to give good title to property to a third-
party petitioner when that defendant does not hold good title
himself.  <u>Caplin & Drysdale, Chartered v. United States</u>, 491
U.S. 617, 627 (1989); <u>see also</u> <u>Madoff</u>, 2012 WL 1142292, at *4
("The relation back doctrine serves the important purpose of
preventing defendants from circumventing forfeiture by
transferring property prior to their convictions.").  The
relation-back doctrine supports the conclusion that
§ 853(n)(6)(A) is likely never to apply to crime proceeds, given
that "the proceeds of an offense do not exist before the offense
is committed, and when they come into existence, the
government's interest under the relation-back doctrine
immediately vests."  <u>Timley</u>, 507 F.3d at 1130.

In this case, Rosenfeld had no vested property interest in
the Settlement Funds at the time of the commission of the
criminal acts giving rise to forfeiture.  The relevant criminal
activity charged in the indictments and the superseding
information occurred from 2002 through November 2008, while
Rosenfeld was not retained by the defendant in connection with

the Insurance Action until August 2010.  (Indictment at 4, 8;
First Superseding Indictment at 5, 9; Second Superseding
Indictment at 5, 9, 10, 12; Superseding Information at 5, 9;
Rosenfeld Decl. Ex. D.)  This Court has already found that the
Settlement Funds are traceable to crime proceeds because they
reimbursed the defendant for attorney's fees she paid with
embezzled funds.  (Tr. at 9-10.)  The evidence supported that
finding, see Yagoda Aff. ¶ 10, and Rosenfeld has not disputed
that the attorney's fees in the Local 147 lawsuit were paid with
embezzled funds.  Thus, Rosenfeld could not have had an interest
in the Settlement Funds that preceded the commission of the
criminal activity because, like all other property traceable to
crime proceeds, the Settlement Funds were not in existence at
the time the criminal activity occurred.[1]

Rosenfeld next argues that he has a superior interest in
the Settlement Funds because those funds would never have come
into the defendant's possession without Rosenfeld's efforts.
However, the relevant question under the forfeiture statute is

---

[1] Rosenfeld argues that, because the Settlement Funds were not in
existence at the time of the criminal activity, the Court should
assess the respective property interests as of the time that the
Funds came into being.  However, this argument reads the
temporal "at the time of the commission of the acts which gave
rise to the forfeiture" requirement out of the statute and
ignores the application of the relation-back doctrine.  Indeed,
when the defendant signed the retainer agreement in August 2010,
Rosenfeld was already too late to have a prior interest to the
Government's because the crime was already concluded and he was
attempting to recover proceeds from that crime.

not whether the property in question was recovered as a result
of an attorney's efforts but instead whether the property is
traceable to crime proceeds, such that the Government's interest
in the property relates back to the time of the commission of
the criminal activity.  See Timley, 507 F.3d at 1128, 1131 & n.3
(attorney who succeeded in having $130,097 in cash returned to
the defendant after it was seized by state authorities could not
recover half of those funds pursuant to his fee agreement,
because the funds were crime proceeds and his attorney's lien
post-dated the commission of the criminal activity); Madoff,
2012 WL 1142292, at *5 (law firm did not have a valid interest
in settlement funds it obtained for client because settlement
funds constituted offense property and thus the government's
interest, which vested at time of commission of acts giving rise
to forfeiture, was superior to law firm's interest).  Thus, the
fact that the Settlement Funds were recovered as a result of
Rosenfeld's efforts does not change the fact that these funds
are traceable to crime proceeds and that the Government's
interest in these funds is therefore superior by operation of
the relation-back doctrine.

    Rosenfeld attempts to avoid this conclusion by contending
that the entirety of the Settlement Funds cannot properly be
considered to be traceable to crime proceeds.  Rosenfeld argues
that the Settlement Funds were intended not only to reimburse

the defendant for past attorney's fees but also to compensate the defendant for future attorney's fees incurred, which could not have involved forfeitable funds because those funds were not yet expended.  However, Rosenfeld has failed to raise a genuine issue of material fact indicating that the entirety of the Settlement Funds is not properly forfeitable.  The Settlement Agreement, on its face, does not apportion a percentage of the Settlement Funds for future indemnification as opposed to reimbursement of past attorney's fees, but instead states generally that the Funds are to be accepted "in full and final satisfaction of any and all amounts that have been or could be submitted for coverage, defense, indemnification or reimbursement for any reason under the [insurance policy]." (Rosenfeld Decl. Ex. M at 2 ¶ 3.)  Moreover, the complaint in the Insurance Action sought $600,000 to cover the past attorney's fees paid by the defendant, and the parties agree that the defendant paid her attorneys in the Local 147 lawsuit at least $212,000.  (Rosenfeld Decl. Ex. K; Gov.'s R. 56.1 Stmt. ¶ 3; Rosenfeld Resp. R. 56.1 Stmt. ¶ 3.)  Accordingly, there is no risk that the $175,000 in Settlement Funds subject to forfeiture exceeds the amount of past attorney's fees paid by the defendant, which are traceable to the criminal activity.

Thus, because Rosenfeld has failed to raise a genuine issue of material fact demonstrating that he had any interest in the

Settlement Funds at the time of the commission of the criminal activity, much less an interest superior to the Government's, he cannot claim a valid interest in the Settlement Funds under 21 U.S.C. § 853(n)(6)(A).

## c.

Rosenfeld next argues that he has a valid interest in the Settlement Funds pursuant to § 853(n)(6)(B), which requires a petitioner to show that:

> the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6)(B).

The Government contends that Rosenfeld cannot claim a valid interest in the Settlement Funds pursuant to this provision because Rosenfeld was not "reasonably without cause to believe" that the Settlement Funds were subject to forfeiture.[2]  The test is an objective, rather than subjective, one and examines "not merely whether the petitioner had knowledge of the

---

[2] Although the Government asserts in its papers that Rosenfeld is an unsecured, general creditor, the Government does not specifically argue that Rosenfeld does not qualify as a "bona fide purchaser for value" under New York law.  See Pacheco, 393 F.3d at 353 (question of whether petitioner is a bona fide purchaser for value is appropriately determined with reference to State law).  In any event, because Rosenfeld was not reasonably without cause to believe that the Settlement Funds were subject to forfeiture, it is unnecessary to address this issue.

forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture." United States v. Reckmeyer, 836 F.2d 200, 204 (4th Cir. 1987). Here, any belief by Rosenfeld that the Settlement Funds were not subject to forfeiture was unreasonable.

Rosenfeld knew that the Insurance Action sought to reimburse the defendant for attorney's fees expended in connection with the Local 147 lawsuit. (Rosenfeld Decl. Ex. K.) In addition, the retainer agreement specified that Rosenfeld's fees would be paid from any funds that were recovered in the Insurance Action. (Rosenfeld Decl. Ex. D.) Rosenfeld had ample reason to believe that the attorney's fees for which the Insurance Action sought reimbursement, and from which Rosenfeld would be compensated, had been paid with crime proceeds. First, the Local 147 lawsuit arose from allegations that the defendant had stolen more than $5 million from Local 147, and the defendant had been indicted on criminal charges of embezzlement in excess of $40 million arising from the same scheme. Moreover, the indictment in effect at the time Rosenfeld was retained contained extensive forfeiture allegations, pursuant to which "all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense" was subject to forfeiture. (First Superseding Indictment at 17.) While the money paid to the attorneys in

connection with the Local 147 lawsuit was not specifically listed, the indictment made clear that the list of property subject to forfeiture was intended to be non-exhaustive.  (Id.) In addition, the Government contends – and Rosenfeld does not appear to dispute – that Rosenfeld had knowledge of the sources from which the attorney's fees in the Local 147 lawsuit were paid, several of which were specifically identified in the First Superseding Indictment, either in the forfeiture provisions or the substantive allegations, as linked to the alleged criminal activity.  See Rosenfeld Decl. Ex. H at 2 & Ex. A at 5 (attaching documentation indicating source of attorney's fees paid in Local 147 lawsuit in response to Government's interrogatories seeking documentation of due diligence that Rosenfeld conducted regarding source of Local 147 attorney's fees); First Superseding Indictment at 13-15, 20-21 ¶ l.)  This information was sufficient to put Rosenfeld on notice that the attorney's fees paid in the Local 147 lawsuit, for which Rosenfeld sought reimbursement, had been paid with tainted funds and were thus subject to forfeiture.  See Timley, 507 F.3d at 1131 (attorney did not have valid interest under § 853(n)(6)(B) where he "acquired his interest over one month after a federal grand jury indicted" the defendant and thus "when [he] filed his attorney's lien he had no reason to believe the government lacked an interest"); United States v. Moffitt, Zwerling &

Kemler, P.C., 83 F.3d 660, 665-66 (4th Cir. 1996) (law firm was
not reasonably without cause to believe that funds paid to it
were subject to forfeiture where it knew that client was subject
of a grand jury investigation and that government had seized
nearly all of the client's assets and "did not seek to obviate
doubts" about the source of the funds paid); cf. United States
v. Bissell, 866 F.2d 1343, 1349 n.5 (11th Cir. 1989) ("It is
unlikely that an attorney will ever achieve [bona fide
purchaser] status since he is the most likely person to
appreciate the forfeitability of his client's assets."); Madoff,
2012 WL 1142292, at *5 (concluding that law firm was not
reasonably without cause to believe that client's property was
subject to forfeiture and noting that "[a] petitioner generally
has reason to believe that property is subject to forfeiture
after an arrest or indictment of its owner has occurred").

     Moreover, the information known by Rosenfeld was sufficient
to indicate to him the need to conduct further inquiry before
seeking to obtain an interest in the Settlement Funds.  See
F.T.C. v. Assail, Inc., 410 F.3d 256, 265 (5th Cir. 2005)
("Based on [§ 853's] statutory language, it stands to reason
that if an attorney has been paid with [tainted] funds . . . and
wishes to retain them, he must demonstrate that he conducted an
inquiry sufficient to allow him to be 'reasonably without cause
to believe that the property was subject to forfeiture.'"); In

re Moffitt, Zwerling & Kemler, P.C., 846 F. Supp. 463, 474 (E.D.
Va. 1994) (attorneys "must ask sufficient direct questions and
take whatever further steps the client's answers might indicate
to ensure that a belief that the funds are legitimate is
objectively reasonable"), aff'd, 83 F.3d 660 (4th Cir. 1996).
Rosenfeld does not assert that he conducted any inquiry to
ensure that the attorney's fees for which he sought
reimbursement in the Insurance Action were not subject to
forfeiture.  Thus, Rosenfeld has not raised a genuine issue of
material fact indicating that he was reasonably without cause to
believe that the Settlement Funds in question were subject to
forfeiture.  Accordingly, Rosenfeld cannot demonstrate a valid
interest in this property pursuant to 21 U.S.C. § 853(n)(6)(B).

Thus, because Rosenfeld has not raised a genuine issue of
material fact demonstrating that he has a valid interest under
21 U.S.C. §§ 853(n)(6)(A) or (B), the Government's motion for
summary judgment dismissing Rosenfeld's third-party petition is
granted and Rosenfeld's motion for summary judgment is denied.

## CONCLUSION

The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
reasons explained above, the Government's motion for summary

judgment is **granted** and Rosenfeld's third-party petition

pursuant to § 853(n) is **dismissed with prejudice**.  Rosenfeld's

motion for summary judgment is **denied**.  The Clerk is directed to

close Docket Nos. 224, 228 and 229.

The Government is directed to submit a final order of

forfeiture within five (5) days.  Rosenfeld may submit a

counter-order three (3) days thereafter.

**SO ORDERED.**

**Dated:**    New York, New York
             June/18, 2012

                                        John G. Koeltl
                                 United States District Judge