```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -  x

UNITED STATES OF AMERICA,       :

            -v.-                :   S3 10 Cr. 122 (JGK)

MELISSA G. KING                 :

          Defendant.            :

- - - - - - - - - - - - - - -  x
```

# GOVERNMENT'S SUR-REPLY SENTENCING MEMORANDUM

PREET BHARARA
*United States Attorney for the
Southern District of New York,
Attorney for United States
    of America.*

JOSEPH P. FACCIPONTI
JASON P. HERNANDEZ
*Assistant United States Attorneys,
    Of Counsel.*

With leave of the Court, the Government respectfully submits this sur-reply memorandum in advance of sentencing.

## I. King Embezzled $40 Million from the Local 147 Funds

In her reply, King contends that the Government has failed to establish the she embezzled any more than $7 million.[1]  King's reply contains pages upon pages of contentions, some of which are new and some of which are variations on the same claims that King has asserted throughout this case.  To aid the Court at sentencing, and to cut through King's myriad baseless arguments, the Government seeks to direct the Court to several simple sentencing facts.

First, there is no real dispute that, from 2002 through 2008, approximately $40 million was transferred from the Local 147 fund accounts to a King Care account.[2]  There is also no dispute that the administrative agreements provided that King was to be paid a fee of approximately $3.6 million during this period for her work as the funds' administrator.  To justify the taking of the remaining tens of millions of dollars, King has advanced the arguments that (i) this amount represents additional billing for "special projects" done at the request of

---

[1] From all of her sentencing submissions, is clear that, but for the plea agreement, King would even dispute the $7 million loss figure.  As discussed below, even in her sentencing reply, King fails to accept any responsibility for her embezzlement from the Local 147 funds.

[2] According to the Local 147 Union, approximately $42.6 million in checks were written by King from the Local 147 fund accounts to the King Care account. (Victim Impact Letter at 2).

1

the Trustees and (ii) this amount also represents deferred compensation from the 1990s.

As to the "special projects," they were not authorized by the Trustees, if they even occurred at all. (Epstein Aff. ¶ 12, Ex. 2 to Gov't Sent. Br. ("Ms. King did not seek (or obtain) the Trustees' approval for any of the foregoing 'special projects.'")); see also Ex. 4 to Gov't Sent. Br. (website report)). Despite her many assurances that the Trustees were indeed aware of the "special projects," and despite the express requirements of the administrative agreements that she provide bills and reconciliations for additional expenses (Agreements ¶¶ 2-3, Ex. 1 to Gov't Sent. Br.), she has not provided the Court with any examples of bills submitted to the Trustees or express discussion of additional fees in the funds' Board minutes. In fact, it was not until she was sued by the Trustees that she provided, in discovery in that matter, receipts that show – at most – documentation for $4.6 million in expenses.[3] (Victim Impact Letter at 4).

---

[3] To be sure, the Forms 5500 filed with the Department of Labor ("DOL") for the three funds in question for the period of 2002 through 2008 disclose approximately $25 million in "other administrative expenses." (See Exs. 6a-c to the Blaustein Report). Of course, the $25 million from the Forms 5500 does not account for all of the $40 million taken from the funds. And in any event, there is nothing in the record that shows that King ever informed the Trustees or the DOL what, exactly, these "other administrative expenses" were for. And for good reason. Had King been candid with the Trustees as to how she was spending the money she took from funds, she would have been terminated.

Turning to King's argument concerning deferred compensation, King concedes that she never raised it in the civil action brought by the Trustees, and provides no plausible explanation for not having done so. (Sent. Reply at 16 n.9). Yet King had every incentive to raise this defense in the civil action. And King has provided no evidence now to substantiate this claim. None of the Board minutes she submitted provide any discussion of deferring King Care's compensation. Instead, in her reply brief, King merely cites to an instance in the Board minutes from 1993 where it appeared that fund expenses were outstripping contributions, but nowhere does it show that King Care was deferred compensation. (*Id.* at 21-22). This argument is simple false.

Finally, King does not dispute that there was a "huge deficit" between the amount of benefits owed to beneficiaries and the amount of money available to the funds.[4] (Sent. Reply at 15-27). While King acknowledges that she played some role in creating this deficit, she places the lion's share of the blame on others. (Sent. Reply Br. at 26). But it was King, not the Trustees, who pocketed $40 million from the funds and it was King who covered up her theft by sending statements to the beneficiaries that overstated the amount of benefits available.

---

[4] The Trustees have calculated this deficit as being approximately $32 million. (Victim Impact Letter at 5).

3

It is hard to see how this "huge deficit" is the fault of anyone other than King.

**II.  King Has Still Failed to Accept Responsibility**

While paying lip-service to the notion that she should appear contrite, King's sentencing reply utterly fails to demonstrate any acceptance of responsibility.  Thus, while she disavows her intention to engage in "finger pointing" (Sent. Reply at 7), she spends significant time in her reply pointing her finger at the Trustees (*e.g.*, *id*. at 23-26), the fund accountants and other professionals (*id.*), her ex-husband (*id.* at 28), and even the Government (*id*. at 27).  She claims that her embezzlement is merely a "civil billing argument."  (*Id*. at 17-18).  She even contends that the Government could not prove its case beyond a reasonable doubt.  (*Id*. at 30).

King persists in offering twisted explanations for the Government's proof that only serve to underscore her guilt and lack of remorse.  She actually asserts that her home swimming pool and her private chef were legitimate business expenses. (Sent. Reply at 19-20, 45).  She claims it was necessary for her to fly on a private jet to avoid a HIPAA violation.  (*Id*. at 30).  She reopens the dispute on the true ownership of her horses despite her failure to present any persuasive evidence on this issue at a hearing in 2010.  (*Id*. at 33-46).  King incredibly claims that a penthouse apartment she rented in

4

Manhattan is yet another King Care office. (*Id*. at 44). Indeed, some of the exhibits King submitted with her reply only underscore the extent to which King Care employees worked on King's personal matters or matters for other unions. (*Id.*, Ex. 6a (Emily Prober's work logs)).

Finally, she demonstrates that she truly does not believe that she did anything wrong. She contends that she is guilty only to the extent she accepted payment for services that did not benefit the funds, not that she embezzled money from the funds for her personal use. (Sent. Reply at 12-14). King's failure to accept even a shred of responsibility for her conduct is repulsive.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court impose a Guidelines sentence of 96 months' imprisonment.

Dated:    June 18, 2012
          New York, New York

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                                  /s/ J.P.F.
                          By:_____
                              Joseph P. Facciponti
                              Jason P. Hernandez
                              Assistant United States Attorneys
                              Tel: (212) 637-2522/1024
                              Fax: (212) 637-2620

5