UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------|
                                                     |
UNITED STATES OF AMERICA                             |
                                                     |
    -v.-                         |
                                                     |
MELISSA G. KING,                                     |
                                                     |
    Defendant.                   |
                                                     |
-----------------------------------------------------|


**RESPONSE TO THE GOVERNMENT'S SUR-REPLY MEMORANDUM
IN <u>ADVANCE OF MELISSA KING'S SENTENCING</u>**


    MICHAEL HANDWERKER, Esq.
    Goldstein and Handwerker, LLP
    280 Madison Avenue, Suite 1202
    New York, NY 10016
    (212) 679-1330 (telephone)
    (212) 779-2469 (facsimile)

    *Attorney for Defendant Melissa G. King*


June 19, 2012
New York, New York

The Defense respectfully submits this response to the government's Sur-Reply Memorandum in advance of Melissa King's sentencing. The Defense would like to note that the government was granted leave of Court to identify various claimed inconsistencies in Ms. King's sentencing submissions, not to put forth a summary of their arguments that are already before the Court.  In their Sur-Reply, the government has yet again failed to substantiate its claims and repeats its positions.  The submissions and documentation submitted on Ms. King's behalf establish by a preponderance of the evidence that the loss amount attributed to Ms. King's embezzlement is $7 million.  The Defense has long supported this, the $7 million loss amount, with forensic accounting analysis and expert opinions; which were formulated based on a review of the Funds' Original Documents.  The $40 million embezzlement claimed by the government is not backed up by anything other than their words.

Ms. King's true character, genuine issues and concerns, and remorse for the victims of her crimes may have been clouded by the length of the submissions.  Ms. King is truly sorry for the devastating loss and harm caused by her actions.  It is respectfully submitted that just punishment for Ms. King's embezzlement, as discussed in prior submissions and below, can and would be accomplished by a non-custodial sentence.

I. The Administrative Costs Were Transparent and Mr. Epstein's Affidavit, Which Claims They Were Not Authorized, Is Not Credible

Contrary to the government's accusation, the Administrative Reports, which were presented to the Trustees of Local 147, were completely candid and reflected the administrative costs[1]; the additional monies paid to KingCare for its duties as Fund Administrator were pursuant to the contract.[2]  The full Fund Documents, including the

---

[1] The government inaccurately refers to all of the administrative costs that are outside of the retainer as "special projects".

[2] See Exhibit 8 of the Reply to the Government's Sentencing Memorandum: "Fund Records that Contradict Epstein's Affidavit". As an example, this Exhibit includes the Administrative Report for the period ending June 2004 which covers the three Funds presented to the Board on November 3, 2004.  The Administrative Report itemized the expenses outside the retainer, *addressed that the expenses on a cash basis are being*

Administrative Reports and the Trustees Minutes, are included in the EisnerAmper Report.  These documents completely discredit Leonard Epstein's Affidavit.  Mr. Epstein, as well as the other Trustees, reviewed and ratified the administrative expenses submitted by Ms. King, and executed the Trustee Minutes that demonstrate the Trustees' awareness of the additional costs.

The EisnerAmper Report also shows that, not only were the additional projects completed, there is extensive documentation showing that the Trustees were demanding services. Indeed, if KingCare did not complete the work, who did? Who computerized the Union? Who completed the Department of Labor Welfare Fund Audit?[3] Who provided all of the services? If the Trustees were not aware and directing the costs, why didn't they question the excess costs that they ratified year after year? What about the accountants, who did field audits, knew the staff and the work that was being produced (including the work completed for the Union, the Welfare Fund, and the Collective Bargaining Parties)? Did Ms. King just decide to design a website all by herself? The government has continually refused to focus on these questions.

In addition, the government is well aware that they stopped the Civil Case in mid-discovery. The argument that KingCare did not put forth the assertion that the expenses go back to the mid-nineties in the Civil Case is disingenuous. Indeed, as soon as Ms.

---

*capitalized over ten years (as directed by the Trustees to the accountant)*, and shows that the expenses on a cash basis paid for the Annuity Fund for the Period ending June 2004 to be $745,000; and for the Additional Security and the Retirement Fund the total was was $900,000 together for half of the year. This shows that the Trustees were well aware of all of the additional administrative expenses that were outside of the retainer and of their nature. All of the Minutes are attached to the EisnerAmper Report.  Exhibit 3 to the EisnerAmper Report also contradicts Mr. Epstein's Affidavit;I Exhibit 3 of the EisnerAmper Report is a Chart showing that the Minutes and the Administrative Reports were reviewed and unanimously adopted by the Board - including the Administrative Report for the November 3, 2004 meeting.

[3] Certainly not Castrovinci, who was on vacation at the time. The Trustees turned to KingCare so they wouldn't be held accountable for a penalty that they couldn't be insured for and would have to pay personally. The Trustees and Fund Counsel were well aware that KingCare would have be compensated as KingCare did not Administer the Welfare Fund.

King was arrested, Defense Counsel met with the AUSA's, DOL Agent Della Penna, and IRS Agent John Hughes, and told them that the expenses went back to the mid-nineties. As the Defense has previously noted, even AUSA Hernandez stated that the expenses could be provable if they went back to the ninety-nineties.

However, contrary to the government's assertion, KingCare did not "pocket" $40 million, let alone Ms. King or her parents. Indeed, the government knows that extraordinary expenses were incurred, greatly reducing the profit level. Further, the government knows that Emily Prober was not billed to L147 for all of her hours. This is just inflammatory and misleading. The Trustees directed and controlled the content of their statements, in conjunction with their Fund Professionals. The last statement that KingCare sent out was for 2006 in 2007 according to the Trustees' Policy, not for 2008 as the government is claiming.

The government also avers that the Form 5500 and the financial statements of the Fund from 2002-2008 only reflect $25 million for administrative expenses; however, they are neglecting to add the amounts that would be reflected in the exchange account and the capitalization and/or equity accumulated of $10,570,770. All the administrative expenses, whether listed as "other" expenses or "capitalized" expenses, were reported in Administrative Reports and analyzed and forwarded to the Fund accountants, according to 20 years of past practice. It should be noted that all "other" administrative expenses were noted in the accountant's work papers, which are in discovery. It should be further noted that all Local 147 operating expenses, minus a few minor expenses and the professionals fees were paid out of the KingCare accounts on behalf of the Funds to be later reimbursed, which was also past practice for 20 years. The difference between the amounts reflected above and the $42 million reflect funds paid after the last certified report during KingCare's tenure.

II. The Tax Issues Raised by the Government And How They Are Not Evidence Of An Embezzlement

The government is well aware that Ms. King's parents owned the horses. The government even attempted to contact their Attorney when they did not step forward to dispute the forfeiture. However, as they had already been red-flagged by the government in 2010, even though they are elderly and infirm, not even their Attorney could come forward on their behalf. The arguments put forth concerning Ann Schurhammer, who provided meals to all employees, even when Ms. King was in Florida, the pool, which was appropriately taxed to the trust, and the apartment that was intended to replace the Soho office, were all properly addressed by an accountant and reviewed by a tax attorney. In addition, whether or not Mr. and Mrs. King, or Ms. King herself, traveled on a private jet is of no moment to this case. The only relevance is whether or not it was taxed appropriately; it was indeed, as it was used for medical and business purposes. On all other occasions, the King Family flew commercial. But this is beside the point; these are tax issues, tax issues that the government is trying to use as evidence of an embezzlement. In any event, Ms. King had no personal knowledge as to how to tax these items; the professionals, including the tax preparer, the tax attorney, and the trust attorney followed the IRS tax code in determining proper procedure.

III. Ms. King Has Accepted Responsibility

The government continues to make these accusations, without evidence, trying to blame KingCare for the totality of the Professionals and the Trustees Decisions. The Defense has submitted huge amounts of documents that counter these arguments. There is no denying that the Trustees requested the additional work and that these and other items were outside the contract. To be sure, the government would like to ignore the complexities of this case, but there has just been too much evidence submitted that defies their position. In the absence of evidence, the government has now resorted to name-calling, referring to Ms. King's conduct as "repulsive." What will it take for them to stop, to look at how many independent experts they are trying to discredit, at how much evidence they are trying to dismiss, at how many deceitful people they are trying to support, in order to make their case?

Talking one on one with Ms. King, Probation recommended acceptance of responsibility. At great peril to herself, Ms. King has additionally tried to set the story straight, which would allow the Participants to go to the proper entities to get their funds back. Ms. King is truly very sorry for the harm caused to the Participants. The King family has nothing left to give. How does it help the government to relentlessly pursue Ms. King? Why won't the government focus on the truth, which would actually help the Participants? There is no way that KingCare caused a $32 million deficit.[4] It's just not possible. Ms. King is very sorry for the devastating loss caused by her actions. However, she cannot take responsibility for a $40 million embezzlement that she did not commit, nor would it make sense that such a crime would have been committed given the amount of oversight by fund professionals and the Department of Labor over several years.

IV. Conclusion

In terms of the all of the issues raised in this five-page sur-reply by the Government, we stand by our highly regarded Experts, the extensive tax law that has put before the Court and the numerous Fund documents and exhibits that show that Ms. King has been forth-coming in producing evidence and facts to this Court. While we don't believe that the government has ben candid in this case, the Defense will not resort to name-calling. We respectfully request that the Court consider all of the facts and circumstances in this case, including Ms. King's health, her elderly parent's health, her disabled daughter's health, as well as her grandchild. We, respectfully, ask the Court to use its discretion and grant a non-custodial sentence in keeping with the needs of her health and her family's health and with the extraordinary circumstances that allow for the variances as previously put before the Court in the Previous Sentencing Memorandums.

---

[4] It should also be noted that supporting documentation for the loss associated with the FICA tax issue from the Trustees Minutes was attached to the Reply to the Government's Sentencing Memorandum as Exhibit 9.

        Respectfully Submitted,

        /s/ Michael Handwerker
        MICHAEL HANDWERKER, Esq.
        Goldstein and Handwerker, LLP
        280 Madison Avenue, Suite 1202
        New York, NY 10016
        (212) 679-1330 (telephone)
        (212) 779-2469 (facsimile)

        *Attorney for Defendant Melissa G. King*